**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

CHRISTOPHER GRAVES,

                                          Civil No. 19-3094 (JRT/KMM)

            Plaintiff,

v.

                       **MEMORANDUM OPINION AND ORDER**

3M COMPANY and AEARO
TECHNOLOGIES LLC,

            Defendants.

---

Daniel E. Gustafson, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; William R Sieben, **SCHWEBEL GOETZ & SIEBEN**, P.A. 5120 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402; David Brackett and Matthew Sellers, **BONDURANT, MIXSON & ELMORE**, 1201 West Peachtree Street, Suite 3900, Atlanta, GA 30309; and for plaintiff.

Benjamin W. Hulse, **BLACKWELL BURKE PA,** 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415; and Simon Gottlieb**, KIRKLAND & ELLIS LLP**, 300 N. LaSalle, Chicago, IL 60654, for defendant 3M.

Plaintiff Christopher Graves purchased several pairs of Combat Arms™ Earplugs, Version 2 ("CAEv2"), designed and manufactured by 3M, to wear at a gun range. Graves alleges that he did not receive instructions on how to properly wear the earplugs and, as a result, that he suffered hearing loss and developed tinnitus.

Graves filed this action in Hennepin County District Court on December 3, 2019, alleging a single claim of product liability: failure to warn. 3M removed the case to federal

court, asserting the federal government contractor defense, and Graves moved to remand.

Because 3M cannot demonstrate any governmental control over the product's warning, and cannot demonstrate any conflict with Minnesota law, 3M cannot demonstrate a "colorable" federal contractor defense, even under a liberal construction of that defense. Accordingly, the Court will grant Graves's Motion to Remand.

## BACKGROUND

### I. FACTUAL BACKGROUND

On December 3, 2019, Plaintiff Christopher Graves filed a lawsuit against 3M Company and Aearo Technologies LLC[1] alleging a single claim under Minnesota product liability law: failure to warn. (Notice of Removal, Ex. 1 ("Complaint") ¶¶ 42–56, Dec. 16, 2019, Docket No. 1.) Graves, a civilian police officer, alleged that he had purchased 3M's Combat Arms™ Earplugs, Version 2 to wear on the gun range. (*Id*. ¶¶ 8, 10.) Graves alleged that he did not receive instructions to fold back the third flange on the opposite side of the use-end of the earplugs, or a warning that the earplug would not be effective without folding back this flange. (*Id*. ¶ 12.) Graves further alleged that 3M knew the

---

[1] The Complaint refers to Aearo Technologies LLC and notes that "[b]ecause 3M acquired both the assets and liabilities of Aearo, Aearo and 3M are used interchangeably, and all allegations against Aearo are directed as a matter of law against 3M." (Complaint ¶ 14.) It appears that 3M acquired a different, but similarly named company, Aearo Technologies, Inc. in 2008. (Notice of Removal at 1 n.1.) Nonetheless, Aearo Technologies LLC, consented to 3M's removal of the case.

earplugs required special instructions for use as early as 2000, (*id.* ¶ 17), yet 3M sold and marketed the earplugs without warning of the need for modified fitting instructions until they discontinued their sale in 2016 (*id*. at ¶¶ 35, 37). Graves alleged that he suffered injury and damage as a direct and proximate result of 3M's failure to warn and/or provide adequate instructions regarding the dangerous condition of the earplugs. (Id. at ¶ 56.)

3M filed a Notice of Removal on December 16, 2019, asserting the federal government contractor defense. (Notice at 2.) Graves filed a Motion to Remand, claiming that 3M failed to demonstrate a federal cause of action. (Dec. 18, 2019, Docket No. 11.)

In support of its claimed federal contractor defense, 3M provided evidence demonstrating the government's involvement in the design of the earplugs, as well as the warnings and instructions which accompanied the product. (Decl. of Benjamin Hulse ("Hulse Decl."), Ex. 1-13, Feb. 4, 2020, Docket No. 47.) In particular, 3M provided evidence that the government was involved, at least to some degree, in the development of the warnings for its commercial earplugs. In December 2005, an Aearo employee named Brian Myers wrote to a US Army audiologist and program manager who was involved in the development of the military version of the product. (Ex. 14 to Hulse Decl. at 2-3, Feb. 4, 2020, Docket No. 60.) Myers explained that 3M was in the process of preparing its commercial packaging "insert," which included an explanation of the product and instructions for use and insertion. (*Id.*) Douglas Ohlin, the audiologist, responded and said that the insert "Looks great." (*Id.* at 2.) Ohlin additionally noted that the insert did

not "mention any potential sizing issues for the smaller ear canals and the single-sided version as an alternative." (*Id.*)  He asked whether 3M was "abandoning that concept." (*Id.*)  Myers responded, saying "No, we should probably include that.  Thanks for pointing that out."  (Ex. 13 to Hulse Decl. at 2, Feb. 4, 2020, Docket No. 59.)  Myers then forwarded his email with Ohlin to another Aearo employee.  (Ex. 14 to Hulse Decl. at 2.)

> The email was then forwarded to a third Aearo employee, with the note:
>
> Just got feedback from the US Army on the instruction guide for the CAE Blister Pack.  Please add a line sentence at the end of the 'Fitting Tips' that says [] 'Some individuals with smaller ear canals may experience discomfort with the dual-ended Combat Arms Earplug due to their restricted canal opening.  A single-sided version of the Combat Arms Earplug is also available and will often times provide greater comfort for smaller ear canals. Single-Sided Combat Arms Earplug – NSN # 6515-01-512-6072.'

(*Id.*)  The email closes by saying "Once you've made this change and the formatting changes we discussed, please send back to me for final review and then we'll roll!"  (*Id.*)  3M additionally provided evidence that this language was included in the instructions that accompanied the commercial product.  (Ex. 12 to Hulse Decl. at 4, Feb. 4, 2020, Docket No. 47-1.)

At oral argument, 3M also argued that the Department of Defense has many documents relevant to the CAEv2 earplugs, and that production of these documents has been delayed.  3M argued that it may well have additional evidence of government involvement once all the documents are released.

### II. MULTI-DISTRICT LITIGATION

This case is one of hundreds of lawsuits against 3M, alleging injury caused by the CAEv2 earplugs. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-md-2885, 2020 WL 365617, at *1 (N.D. Fla. Jan. 22, 2020). 3M asserts that each of the suits filed in Minnesota state court has, without exception, been removed to the District Court of Minnesota and transferred to the 3M Combat Arms Earplug Multidistrict Litigation Court ("MDL Court") in the Northern District of Florida. (Mem. Opp. Remand at 1, Feb. 4, 2020, Docket No. 45.) The parties agree that given the nature of Graves's claims, this case would very likely be transferred to the MDL court if it is not remanded to state court. (*See* 3M's Letter to Court at 2, Jan. 14, 2020, Docket No. 40; Graves's Letter to Court at 2, Jan. 10, 2020, Docket No. 39.)

The MDL Court has denied hundreds of remand motions by plaintiffs who initially brought claims in Minnesota state court. *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 365617, at *6. All of these complaints, however, involve only design defect claims, or failure-to-warn claims paired with design defect claims. *Id.* at *2. It does not appear that the MDL court has considered any cases alleging only a failure-to-warn claim.

### DISCUSSION

I. **REMAND AND THE FEDERAL OFFICERS REMOVAL STATUTE**

Typically, a defendant may remove a civil action to federal court only if the action could have been filed originally in federal court. *See* 28 U.S.C. § 1441(a); *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000). As a rule, where a complaint pleads only

state law claims, a federal court does not have jurisdiction based on a federal defense. *See, e.g.*, *Aetna Health Inc. v. Davila,* 542 U.S. 200, 207 (2004). However, the Federal Officer Removal Statute provides an exception to that rule. 28 U.S.C. § 1442(a)(1). The statute provides that cases against federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

To satisfy the Federal Office Removal Statute, the removing defendant must plausibly allege that (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal connection between the defendant's actions and the official authority; and (4) the defendant raises a "colorable" federal defense. *See Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012). A defendant need only demonstrate that its defense is "colorable," not "clearly sustainable." *Jacks*, 701 F.3d at 1235. "For a defense to be considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate." *Guggenberger v. Starkey Labs., Inc.*, No. CV 16-2021 (JRT/LIB), 2016 WL 7479542, at *11 (D. Minn. Dec. 29, 2016) (quoting *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001)).

The parties dispute whether 3M has demonstrated a causal connection and colorable federal defense. The party seeking removal to federal court bears the burden

of demonstrating that removal was proper, even under the Federal Officer Removal Statute. *Bor-Son Bldg. Corp. v. Heller,* 572 F.2d 174, 181 n.13 (8th Cir. 1978) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). All doubts about federal jurisdiction must be resolved in favor of remand. *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007).

### A. CAUSAL CONNECTION

Graves disputes whether 3M has demonstrated a causal connection between its actions and the official authority. Historically, courts have considered causal connection to be a low hurdle. *See, e.g., Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (noting the "[t]he hurdle erected by [the causation element] is quite low"). However, defendants were still required to demonstrate that the act for which they were being sued occurred at least in part "*because of* what they were asked to do by the Government." *Id*. (emphasis in original).

In 2011, Congress amended the statute to encompass suits "for or *relating to* any act under color of [federal] office." 28 U.S.C. § 1442(a)(1) (2011) (emphasis added); *see also In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015), *as amended* (June 16, 2015). As a result, the hurdle is now even lower, requiring only that the suit relates to an official act. The Third Circuit has interpreted the rule to mean that the condition is met if the act has a "connection" or "association" with a governmental act. *In re Commonwealth's Motion*,

790 F.3d at 471.² Furthermore, the Supreme Court has made clear that the courts should credit Defendant' theory of the case when determining whether a causal connection exists. *Jefferson County*, 527 U.S. at 432.

3M provided several pieces of evidence demonstrating that the warnings and instructions for its earplugs plausibly have some connection to, or association with, governmental actions. As such, the Court finds that 3M has met this initial low hurdle.

**B. COLORABLE DEFENSE UNDER THE FEDERAL CONTRACTOR DEFENSE**

Graves also argues that 3M has not demonstrated a colorable defense under the federal government contractor defense.

### 1. Federal Contractor Defense Requirements

On the whole, the contractor defense shields federal contractors by preempting state tort liability for "design defects³ in military equipment . . . when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those

---

² *See also Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) ("[A]ny civil action that is connected or associated with an act under color of federal office may be removed.")

³ Although *Boyle* sets out the defense in terms of design defect claims, 3M seeks to expand the defense to cover failure-to-warn claims like Graves's. *Boyle v. United Technologies Corp.* 487 U.S. 500, 512 (1988). While the Eighth Circuit has not considered the issue, it is a logical expansion, and one supported by the great majority of courts. *See Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 210–11 (4th Cir. 2016) (noting that the Second, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits have approved the defense for failure-to-warn cases and "join[ing] the chorus" to add the Fourth Circuit.). The Court also finds that the federal contractor defense applies to failure-to-warn claims.

specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Technologies Corp.* 487 U.S. 500, 512 (1988). "Stripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.'" *In re Joint E. & S. Dist. New York Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990).

In interpreting *Boyle*, courts have been somewhat opaque in determining what is required to find that the United States approved reasonably precise specifications, and the Eighth Circuit has not reached this issue.[4] The courts that have considered the topic appear to fall into several different camps.

On the more demanding end, the Second, Ninth, and Eleventh Circuits generally require that courts must find "both (a) a conflict between the requirements of state tort law and those of the Government contract and (b) an exercise of Government discretion in considering the design feature in question." *Lewis v. Babcock Indus., Inc.*, 985 F.2d 83, 86 (2d Cir. 1993); *see also Boyle* 487 U.S. at 507–08 (noting that while "the conflict with federal policy need not be as sharp" as is required in other preemption contexts,

---

[4] 3M argues that the MDL court in Florida has considered this issue, but in fact, that court focused on the "acting under" element not at issue here. When that court considered the "colorable defense" element, it appears to have considered only the defective design claims, and not any failure-to warn-issues. *See In re 3M Combat Arms*, 2020 WL 365617, at *5.

nonetheless, "conflict there must be".) [5] Unlike the "causal connection" element in the Federal Officer Removal Statute, which only requires some association or connection with governmental action, the analysis here requires more.

On the more relaxed end, the Sixth and Seventh Circuits do not require an explicit "conflict" analysis, but instead appear to find that mere government involvement is sufficient. *See Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995) ("Where a contractor proposes warnings that the government substantively approves, and satisfies the second and third conditions, the defense displaces state law—even if the government did not 'prohibit' the contractor from proposing more alarming warnings.")[6]

The Fourth Circuit, however, has taken a middle route. In developing a standard relating to "military battlefield conduct" not relevant here, the Fourth Circuit interpreted

---

[5] *See, e.g., Butler v. Ingalls Shipbuilding, Inc.,* 89 F.3d 582, 586 (9th Cir. 1996) (The government contractor defense is only available in a failure-to-warn case when there is "evidence that in making its decision" about the nature of the warning, the defendant was "acting in compliance with reasonably precise specifications imposed on it by the United States" because if "no conflict exists between requirements imposed under a federal contract and a state law duty to warn, regardless of any conflict which may exist between the contract and state law design requirements, *Boyle* commands that we defer to the operation of state law"); *Dorse v. Eagle-Picher Indus., Inc.,* 898 F.2d 1487, 1489–90 (11th Cir. 1990) (finding that nothing in the government specifications prohibited the necessary warning, and thus there was no conflict and the defense could not apply).

[6] *See also Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 1003–04 (7th Cir. 1996) ("[W]hen state law would otherwise impose liability for a failure to warn, that law can be displaced when the contractor can show that: (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government.")

*Boyle* to say that "no 'uniquely federal interest' warrants preemption when the federal government has little or no control over a contractor's conduct." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 348 (4th Cir. 2014). This interpretation clarifies the Supreme Court's illustration in *Boyle*:

> If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. The contractor could comply with both its contractual obligations and the state-prescribed duty of care. No one suggests that state law would generally be pre-empted in this context.

*Boyle*, 487 U.S. at 509.

It is possible that in formulating their interpretations of *Boyle*, the Sixth and Seventh Circuits assumed a prerequisite of governmental control over a contractor when the government "substantively approved" certain warnings. If the government had full control, a contractor would have no ability to alter warnings to match the requirements of state law. In those cases, the governmental interest in having its specified warnings would inherently conflict with any contrary state requirements. On the other hand, if the government merely suggested or considered certain warnings, then the contractor might well retain full ability to comply with state requirements. In those cases, a court would need to consider the nature of the government's requirements and their conflict with state law.

## 2. Application to the Present Case

Having reviewed and analyzed these cases, the Court will first look to see if the government exercised such control that a conflict with state law would be implied. If not, the Court will then consider whether 3M could have complied with its governmental requirements as well as state law.

3M has presented evidence that the government was involved, at least to some degree, in the development of the warnings for its commercial earplugs.[7] In developing the instructions for the commercially available earplugs, 3M sought input from the US Army audiologist who had been working on the military product. The audiologist agreed that the instructions "looked good," and asked whether 3M intended to abandon differential sizing. 3M, realizing it had forgotten something useful, incorporated the feedback into the instructions in the final product.

However, 3M has not demonstrated that the government had any control over the instructions or warnings. 3M has not shown that they were obligated to seek government review, or that governmental approval of the commercial product's warnings was

---

[7] 3M also spends a significant portion of its briefing arguing that the government was involved in the design of the product. Whether the government was involved in the product design is not a relevant consideration in a pure failure-to-warn case, because these are two separate claims. *See, e.g., Tate*, 55 F.3d 11 at 1156 ("Simply because the government exercises discretion in approving a design does not mean that the government considered the appropriate warnings that ought to accompany the product.") The MDL court has established that the government was sufficiently involved in the design of the earplugs for the government contractor defense to apply to defective design claims, but those claims are not made here. *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 365617, at *6**.

necessary or required. Instead, in the Court's view, it appears that 3M voluntarily approached Ohlin for his advice, and that he gave advice 3M found useful. Given these facts, the Court would be hard-pressed to find that 3M could reasonably say "the Government made me do it" as to the instructions on the commercially available earplugs. *New York Asbestos Litig.*, 897 F.2d at 632.

Nor has 3M made any showing that it could not comply with both its governmental requirements (if there were any at all) and Minnesota state law. Voluntarily seeking advice from the government on a commercial product does not give rise to the federal contractor defense.

The Court finds therefore that 3M has failed to show government control or a conflict with state law and has thus failed to show it plausibly has a colorable claim under the federal contractor defense.[8]

Accordingly, the Court will grant Graves's Motion to Remand.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

Plaintiff's Motion to Remand [Docket No. 11] is **GRANTED.**

---

[8] To the extent that 3M suggests that the government may eventually provide additional documentation, which would further support its claim, this argument fails. 3M has the burden to demonstrate a colorable federal defense now, and it may not rely on the mere possibility of some future evidence as the basis for removal.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 23, 2020              _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                           Chief Judge
                                       United States District Court